NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

SHIRA H., *Appellant,*

*v.*

DEPARTMENT OF CHILD SAFETY, C.H., C.H., *Appellees.*

No. 1 CA-JV 20-0241
FILED 1-26-2021

Appeal from the Superior Court in Yavapai County
No. V1300JD201980027
The Honorable Anna C. Young, Judge

**AFFIRMED**

COUNSEL

Robert D. Rosanelli Attorney at Law, Phoenix
By Robert D. Rosanelli
*Counsel for Appellant*

Arizona Attorney General's Office, Mesa
By Amanda Adams
*Counsel for Appellee Department of Child Safety*

---

## MEMORANDUM DECISION

Judge Lawrence F. Winthrop delivered the decision of the Court, in which Presiding Judge Paul J. McMurdie and Judge Cynthia J. Bailey joined.

---

**W I N T H R O P**, Judge:

**¶1**        Shira H. ("Mother") appeals the juvenile court's order terminating her parental rights to C.H. (born February 20, 2009) and C.H. (born March 23, 2010) ("the children").[1]  Mother argues the juvenile court erred in finding the Department of Child Safety ("DCS") made reasonable and diligent efforts to provide appropriate reunification services because DCS failed to provide Mother with an updated psychiatric evaluation.  For the following reasons, we affirm.

### FACTS[2] AND PROCEDURAL HISTORY

**¶2**        In early 2016, DCS received multiple reports that Mother had neglected the children based on her drug use, history of exposure to domestic violence, and unstable housing.  The reports also indicated Mother frequently left the children home alone or with various caregivers for extended periods, without any indication of when she would return.

**¶3**        Initially, DCS arranged for a safety monitor to be in the home, allowing the children to remain with Mother.  But after only a month, DCS took physical custody of the children when drug paraphernalia was discovered in Mother's home within reach of the children.  Based on Mother's continuing substance abuse and neglect of the children, DCS initiated dependency proceedings.  The court found the children dependent as to Mother in early 2017.

---

[1]     The court terminated Mother's parental rights to her oldest child, M.D. (born December 2, 2005), in a separate action in February 2019; M.D. is not a subject of this appeal.

[2]     We review the facts and reasonable inferences therefrom in the light most favorable to affirming the juvenile court's order.  *Ariz. Dep't of Econ. Sec. v. Matthew L.*, 223 Ariz. 547, 549, ¶ 7 (App. 2010).

¶4 While in DCS care, the older child reported instances of Mother's neglect and physical abuse. The child also reported that she did not feel safe when with Mother or want any contact with her.

¶5 DCS initiated services for Mother to assist in family reunification. DCS referred Mother for drug testing,[3] domestic violence counseling, a psychological evaluation, individual and family counseling, parenting classes, parent-aide services, transportation services, and visitation. To reunify with her children, Mother needed to show that she could protect them from domestic violence and could provide for their basic needs. She also needed to demonstrate proper parenting skills, address her substance abuse issues, and complete all recommended behavioral health services.

¶6 Mother showed some engagement with the services offered. She completed a parenting class, and also completed both a substance abuse and mental health assessment. Mother also completed a psychological evaluation in 2017 and a psychiatric evaluation in 2018. Mother participated in unsupervised visitation with the children, but DCS transitioned the case to supervised visitation after Mother brought her boyfriend to a visit, creating a safety risk for the children.[4]

¶7 Mother's participation in individual counseling, anger management counseling, and cognitive behavioral therapy was inconsistent. Mother had a long history of domestic violence relationships, yet she never completed her domestic violence counseling program. Mother also failed to complete family counseling—she refused to continue attending because she disliked the counselor and was not allowed to switch to another counselor. In addition, Mother did not complete her portion of a bonding/best interests assessment for the children.

¶8 In January 2020, DCS moved to terminate Mother's parental rights to the children. Mother failed to appear at the severance hearing. Mother's counsel moved to continue the hearing, explaining Mother had

---

[3] Mother consistently tested positive for marijuana. Mother later obtained a medical marijuana card and tested within the limits prescribed.

[4] DCS determined that Mother's boyfriend had an ongoing unrelated DCS case alleging domestic violence.

been having car trouble, but the court denied the motion.[5] After the presentation of the evidence, the court took the matter under advisement and later issued an order terminating Mother's parental rights, finding DCS had adequately proven multiple grounds for severance: neglect, fifteen-month out-of-home placement, and the termination of Mother's parental rights to another child within the preceding two years for the same causes. *See* Ariz. Rev. Stat. ("A.R.S.") § 8-533(B)(2), (8)(c), (10). The court also found severance was in the children's best interests.

**¶9**         Mother timely appealed. We have jurisdiction pursuant to A.R.S. § 8-235(A) and Rule 103(A) of the Arizona Rules of Procedure for the Juvenile Court.

## ANALYSIS

### I.    *Standard of Review*

**¶10**        Parents have a fundamental liberty interest in the custody, care, and management of their children. *Kent K. v. Bobby M.*, 210 Ariz. 279, 284, ¶ 24 (2005). The court may sever parental rights if it finds clear and convincing evidence of one of the statutory grounds for severance and finds, by a preponderance of the evidence, that severance is in the children's best interests. *See* A.R.S. §§ 8-533(B), -537(B); *Kent K.*, 210 Ariz. at 281-82, 288, ¶¶ 7, 41.

**¶11**        We review the juvenile court's order severing a parent's rights for an abuse of discretion, and we will not disturb the order unless no reasonable evidence supports its factual findings. *E.R. v. Dep't of Child Safety*, 237 Ariz. 56, 58, ¶ 9 (App. 2015); *Matthew L.*, 223 Ariz. at 549, ¶ 7. As the trier of fact in a termination proceeding, the juvenile court "is in the best position to weigh the evidence, observe the parties, judge the credibility of witnesses, and resolve disputed facts." *Jordan C. v. Ariz. Dep't of Econ. Sec.*,

---

[5]       Mother emailed her attorney the day before the severance hearing stating she had been notified that her vehicle was unsafe to drive. Mother represented to her attorney that she would try to call in to the hearing, but never did. DCS told the court that Mother had not been in contact to try to arrange alternate transportation and argued that Mother's excuse did not rise to the level of good cause to continue the hearing. Following the court's denial of the motion to continue, Mother did not file a motion for reconsideration, submit any affidavit or proffer of testimony she would provide, nor file a motion to set aside the termination order based on her inability to attend the hearing.

223 Ariz. 86, 93, ¶ 18 (App. 2009) (quoting *Ariz. Dep't of Econ. Sec. v. Oscar O.*, 209 Ariz. 332, 334, ¶ 4 (App. 2004)). We do not reweigh evidence on appeal. *See Jesus M. v. Ariz. Dep't of Econ. Sec.*, 203 Ariz. 278, 282, ¶ 12 (App. 2002).

II.     *Reunification Services*

**¶12**     The juvenile court may sever parental rights pursuant to A.R.S. § 8-533(B)(8)(c) if DCS has made diligent efforts to provide the parent with reunification services, the child has been in an out-of-home placement for fifteen months or longer, "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement and there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future."

**¶13**     On appeal, Mother argues the juvenile court erred in finding DCS made reasonable and diligent efforts to provide her with reunification services because DCS did not provide her with an updated psychiatric evaluation. Mother does not challenge that the children have been in an out-of-home placement for fifteen months or longer.[6]

**¶14**     Mother received a psychological evaluation in May 2017. The psychologist, Dr. Mansfield-Blair, diagnosed Mother with cannabis use disorder and unspecified personality disorder. Dr. Mansfield-Blair also stated in the evaluation, "[T]here does not appear to be a need for a psychiatric evaluation at this time," but advised that if Mother's diagnosis should change in the future, "it may become beneficial to obtain a psychiatric evaluation" to determine if other treatment strategies would be helpful. A year later, Mother obtained a psychiatric evaluation through the Guidance Center. The Guidance Center had diagnosed Mother with adjustment disorder with anxiety as early as 2016, but in 2019 she was also diagnosed with major depression.

**¶15**     Based on Dr. Mansfield-Blair's evaluation recommendation, Mother maintains that she should have been provided an updated

---

[6]     We also note that Mother does not challenge the other grounds for severance found by the juvenile court, A.R.S. § 8-533(B)(2) and (10), and we could affirm on those grounds. *See Jesus M.*, 203 Ariz. at 280, ¶ 3 ("If clear and convincing evidence supports any one of the statutory grounds on which the juvenile court ordered severance, we need not address claims pertaining to the other grounds."). However, in our discretion, we choose to address Mother's argument as presented.

psychiatric evaluation in 2019 or 2020 after major depression had been added to her psychological diagnosis. Mother argues that an updated psychiatric evaluation would have given the juvenile court additional information on her current mental health status. Mother also contends that by denying her an updated psychiatric evaluation, DCS failed to make a diligent effort to provide her with adequate services as recommended by an expert, and thus denied her the opportunity to resolve her mental health issues through updated treatment/medication to become a more effective parent.

¶16 We disagree with Mother's conclusion that DCS failed to provide adequate services by not requiring an additional psychiatric evaluation. The record shows that Mother continued to receive psychiatric services, including medication services, through the Guidance Center in the years following the 2018 psychiatric evaluation, including after her updated diagnosis of major depression. Mother's mental health records from the Guidance Center were admitted as part of the record and thus the court was aware of Mother's updated diagnoses and ongoing treatment recommendations. Moreover, Mother had declined psychiatric care in the past and the record shows that in 2020, before the severance hearing, Mother continued to refuse to participate in group behavioral therapy, which was recommended to address her ongoing mental health issues. At that same time, Mother also asserted she did not want any medication for her mental health conditions.

¶17 In making diligent efforts to provide reunification services under A.R.S. § 8-533(B)(8), DCS is "not required to provide every conceivable service," but must present the parent "with the time and opportunity to participate in programs designed to help [the parent] become an effective parent." *Maricopa Cnty. Juv. Action No. JS-501904*, 180 Ariz. 348, 353 (App. 1994). There is no indication that an additional psychiatric evaluation would have allowed Mother to become an effective parent when she had repeatedly failed to meaningfully participate in or cooperate with already-recommended mental health treatment over the previous four years of the case. *See Mary Ellen C. v. Ariz. Dep't of Econ. Sec.*, 193 Ariz. 185, 192, ¶ 34 (App. 1999) (stating DCS is not required to take measures that are futile and need only "undertake measures with a reasonable prospect of success"). Reasonable evidence supports the juvenile court's finding that DCS made diligent efforts to provide appropriate reunification services.

### III. *Best Interests of the Children*

**¶18** Mother does not challenge, and has therefore waived any argument regarding, the juvenile court's finding that termination of her parental rights was in the children's best interests. *See Crystal E. v. Dep't of Child Safety*, 241 Ariz. 576, 577, ¶ 5 (App. 2017). Nevertheless, we note reasonable evidence supports that finding. *See generally Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 5 (1990) ("[B]est interests of the child are a necessary, but not exclusively sufficient, condition for an order of termination."). Here, the juvenile court found severance would further the case plan of adoption and provide the children with much-needed permanency after being in foster care for almost four years. The court also found "[b]oth children are happy, safe and secure in their current placements" and that their adoptive placements "are meeting all of the children's needs." Accordingly, reasonable evidence supports the juvenile court's finding that severing Mother's parental rights was in the children's best interests.

## CONCLUSION

**¶19** For the foregoing reasons, we affirm the juvenile court's order terminating Mother's parental rights to the children.



AMY M. WOOD • Clerk of the Court
FILED: AA

7